UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * *

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | 2:07-cr-0254-JCM-RJJ |
| vs. | ) | REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| | ) | (Defendant's Motion to Suppress #36) |
| CHESTER ARTHUR STILES, | ) | |
| Defendant. | ) | |

This matter was submitted to the undersigned Magistrate Judge on Defendant Chester Arthur Stiles Motion to Suppress (#36). The Court has considered the Defendant's Motion to Suppress (#36); the Government's Response (#40); and Defendant's Reply (#43). The Court conducted an evidentiary hearing, then granted the parties permission to file their closing arguments and any supplemental briefing in writing. The Government filed a Supplemental Brief (#48), which was followed by the Defendant's Supplemental Briefing (#50).

**BACKGROUND**

On September 8, 2007, a videotape was delivered to the Nye County Sheriff's Office allegedly containing footage of Chester Arthur Stiles (Stiles) molesting and engaging in sexual acts with a 2 to 3-year old girl. On October 10, 2007, a federal grand jury indicted Stiles, charging him with one count of production of child pornography in violation of 18 U.S.C. § 2251(a).

On October 15, 2007, Stiles was arrested during a routine traffic stop in Henderson, Nevada and transported to the Clark County Detention Center (CCDC). Stiles was not given *Miranda* warnings during his post-arrest transport to the CCDC. During transport, Stiles made potentially

incriminating statements to the transporting officer.

Upon arrival at the CCDC, Stiles was administratively processed. After he was processed, Stiles was placed in an interview room for questioning. Present in the interview room were two Las Vegas Metro Police Department officers as well as an FBI agent (Law Enforcement). Stiles was not advised of his *Miranda* rights prior to being placed in the room or at anytime during the interview. The interview was recorded and transcribed.[1]

At the outset of the interview, when asked how he would like to be addressed, Stiles stated that he did not want to talk without a lawyer. All three law enforcement witnesses testified that they understood this to be an unequivocal request for a lawyer. Despite the request, the recorded interview continued for approximately twelve (12) minutes. During the course of the recorded interview, Stiles made several potentially incriminating statements.

Subsequent to the recorded interview, as law enforcement officers were preparing to leave the interview room, Stiles inquired about the status and whereabouts of the car he was driving when arrested. The conversation was initiated by Stiles and was unprovoked by any words or action on the part of law enforcement. During the conversation, Stiles disclosed the location of certain of his personal belongings. He gave detailed directions to a bottle he had placed in the desert. The bottle contained items he requested that law enforcement retrieve and deliver, including a key to a storage facility where his possessions were stored.

Based on Stiles detailed directions, law enforcement located the bottle and applied for search warrants. Search warrants were issued for both the bottle and the storage facility. The search warrants were executed. The bottle contained, among other things, a key to the storage unit and several handwritten letters. *See* Ex. C attached to Def's. Mot. (#36). The storage unit contained six (6) digital video discs, twenty-one (21) compact discs, sixteen (16) VHS tapes, handwritten notes, and two images of adult female pornography with the photo of younger female taped over the face. Ex. C.

Stiles asks the court to suppress all statements made on October 15, 2008, in the CCDC

---

[1] The audio recording was admitted into evidence as Government's Exhibit 1 during the January 6, 2009, evidentiary hearing. The transcript of the interview was identified but not admitted.

interview room and all evidence obtained during the execution of search warrants for the storage facility and the bottle. Stiles argues that suppression is warranted because law enforcement failed to give him *Miranda* warnings prior to conducting the October 15, 2008, interview. Stiles argues further that the interview violated his Sixth Amendment rights because the government "deliberately elicited" information subsequent to his indictment without an attorney present. Finally, Stiles argues that the statements which formed the basis for the search warrants were derived from his statements during the interview and, therefore, the items obtained pursuant to the search warrants should also be suppressed as the "fruits" of the alleged constitutional violations.

As to the recorded interview, the Government concedes that Stiles was in custody and was not given *Miranda* warnings during his post-arrest transportation or at anytime during the interview at the CCDC. However, the Government contends that the interview at the CCDC did not amount to an interrogation, thereby obviating the need to give *Miranda* warnings. Additionally, the Government argues that it scrupulously honored Stiles invoked right, and that any communication was voluntarily initiated by Stiles, not law enforcement.

Further, the Government argues that it did not violate Stiles' Sixth Amendment rights because, although the right to counsel attached on the date of indictment, Stiles had not invoked the right by hiring an attorney or requesting appointed counsel. Moreover, even if Stiles did invoke his Sixth Amendment right to counsel, the Government contends that it did not "deliberately elicit" any incriminating statements during the interview.

The Government makes three arguments in relation to the statements made by Stiles about the car, bottle, and storage facility subsequent to the recorded interview. First, the statements were made spontaneously by Stiles and not in response to any question or statement by law enforcement. Second, any connection between the statements made after the recorded interview is so attenuated from the initial illegality, if any, as to dissipate any taint. Finally, the Government argues that the evidence recovered from storage facility would have been inevitably discovered because law enforcement knew about the facility, knew that Stiles stored items inside the facility, and already had the facility under surveillance.

Case 2:07-cr-00254-JCM-RJJ   Document 52   Filed 03/18/09   Page 4 of 13

**DISCUSSION**

**1. Miranda**

The obligation to administer *Miranda* warnings attaches once a person is subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). Custody turns on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *U.S. v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir. 2005) (citing *United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002)). In addition to being in custody, the accused must also be subject to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Not every question asked in a custodial setting constitutes interrogation. *U.S. v. Chen*, 439 F.3d 1037, 1040 (9th Cir. 2006) (citing *U.S. v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1982)). Interrogation means questioning or "its functional equivalent," including "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. 291 at 301.

Based on the record before the Court, there are three instances where Stiles communicated with law enforcement during his post-arrest transport and interview on October 15, 2007: (1) during his transportation to the CCDC; (2) during a recorded interview with law enforcement; and (3) subsequent to the recorded interview. The Government concedes that Stiles was in custody at all times relevant to the motion.

**A. Statements Made During Transportation To The Clark County Detention Center**

After his arrest on October 15, 2007, Stiles was transported to the CCDC. He was not given *Miranda* warnings prior to being placed in the vehicle or at any point during transport. During the January 6, 2008 evidentiary hearing, the transporting officer testified that during the transportation Stiles made several unprovoked, spontaneous statements. The testimony was not disputed. A spontaneous statement does not require a *Miranda* warning. *Beaty v. Steward*, 303 F.3d 975, 991 (9th Cir. 2002); *see also Cox v. Del Papa*, 542 F.3d 669, 675-76 (9th Cir. 2008). Accordingly, the Court finds that, although Stiles was in custody, the statements made during

1  transportation to the CCDC were not the product of interrogation.  As such, there was no

2  *Miranda* violation and all statements made by Stiles during his transportation to CCDC are

3  admissible.

4        **B.  Statements Made During The Recorded Custodial Interview At The Clark**

5  **County Detention Center**

6        The gravamen of this dispute centers around the statements made by Stiles at the CCDC

7  during a post-arrest interview with law enforcement.  As relates to *Miranda*, the Government's

8  position rests on whether Stiles was interrogated.  If there was no interrogation, there was no

9  need to give *Miranda* warnings.  However, if the post-arrest interview was a custodial

10  interrogation, the failure to give *Miranda* warnings requires suppression of the statements.

11        In its opinion in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court concluded

12  that certain procedural safeguards are necessary in the context of custodial interrogation in order

13  to protect a defendant's Fifth Amendment privilege against compulsory self-incrimination.  *Innis*,

14  446 U.S. at 297.  "More specifically, the Court held that 'the prosecution may not use statements,

15  whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant

16  unless it demonstrates the use of procedural safeguards effective to secure the privilege against

17  self-incrimination.'" *Id*. (quoting *Miranda*, 384 U.S. at 444).  The Court referred to

18  "interrogation" as actual "questioning initiated by law enforcement officers." *Miranda*, 384 U.S.

19  at 444.

20        The Supreme Court has since expanded that definition, finding that the "goals of the

21  Miranda safeguards could be effectuated if those safeguards extended not only to express

22  questioning, but also to its "functional equivalent." *Arizona v. Mauro*, 481 U.S. 520, 526 (1987).

23  In *Innis*, the Court defined the phrase "functional equivalent" of express questioning to include

24  "any words or action on the part of the police (other than those normally attendant to arrest and

25  custody) that the police should know are reasonably likely to elicit an incriminating response

26

27

28

1  from the suspect." *Innis*, 446 U.S. at 301.[2] "The latter portion of this definition focuses
2  primarily upon the perceptions of the suspect, rather than the intent of the police. *Id*.

3        Accordingly, whether custodial questioning constitutes custodial interrogation is an
4  objective inquiry, and the subjective intent of the police, though relevant, is not determinative
5  because the focus is on the defendant's perceptions. *U.S. v. Chen*, 439 F.3d 1037, 1040 (9th Cir.
6  2006) (citation omitted). "This focus reflects the fact that the *Miranda* safeguards were designed
7  to vest a suspect in custody with an added measure of protection against coercive police
8  practices, without regard to objective proof of the underlying intent of the police." *Innis*, 446
9  U.S. at 301. Thus, the fact that a question is objective, or was not asked in an attempt to elicit
10 evidence of crime, is insufficient for finding that the questioning is not an interrogation. *Booth*,
11 669 F.2d at 1238. "Even a relatively innocuous question may, in light of the unusual
12 susceptibility of a particular subject, be reasonably likely to elicit an incriminating response." *Id*.
13 (citing *Innis*, 446 U.S. at 302 n. 8); *see also United States v. Henley*, 984 F.2d 1040, 1042 (9th
14 Cir.1993). Ultimately "[t]he test is whether, under all the circumstances involved in a given case,
15 the questions are 'reasonably likely to elicit an incriminating response from the suspect.'" *Chen*,
16 439 F.3d at 1040 (quoting *Innis*, 446 U.S. at 301).

17       Turning to the facts of the present case, the Court finds that the recorded interview
18 conducted at the CCDC qualifies as a custodial interrogation for purposes of *Miranda*. It is
19 undisputed that Stiles was in custody. He had been arrested. He had been administratively
20 processed. After processing, he was placed in an interview room. Present in the interview room
21 were three law enforcement officers. During the evidentiary hearing, the lead investigator
22 testified that the purpose of the interview was to *Mirandize* Stiles, question him and, ultimately,
23 obtain a confession. In response to the first question regarding how he would like to be
24 addressed, Stiles requested an attorney.

25       To the extent the government now contends the invocation was anticipatory and therefore

---

[2] "An incriminating response refers to 'any response-whether inculpatory or exculpatory-that the prosecution may seek to introduce at trial.'" *United States v. Padilla*, 387 F.3d 1087, 1093 (9th Cir. 2004) (citing *Innis*, 446 U.S. at 301).

invalid, the argument is unpersuasive. Although the Ninth Circuit acknowledges that *Miranda* rights do not apply "outside the context of custodial interrogation" it has not clearly defined the parameters of a custodial context. *See United States v. Wright*, 962 F.2d 953 955 (9th Cir. 1992). Other circuits have held that the invocation of *Miranda* rights is valid during custodial interrogation or when such interrogation is imminent. *See, e.g.*, *United States v. Rambo*, 365 F.3d 906, 909 (10th Cir. 2004) ("in order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be imminent") (internal quotations omitted); *United States v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) ("*Miranda* rights may be invoked only during custodial interrogation or when interrogation is imminent").

Here, all law enforcement testified that they understood this to be an unequivocal request for an attorney. Based on the circumstances, the Court finds that Stiles validly invoked his *Miranda* right to counsel at the outset of a custodial interrogation.

When an accused has expressed "his desire to deal with the police only through counsel" he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). The government argues that once Stiles invoked his right to counsel, any designs on interrogation ceased and all communication was initiated by Stiles.[3] The argument is unavailing.

The post-invocation conversation revolved indirectly around the facts of this case and was initiated by law enforcement. Although law enforcement never inquired directly about the case or any evidence it had in its possession, the recorded interview clearly shows a situation where law enforcement would initiate conversation or keep a prior conversation alive by making comments reasonably likely to elicit a response. For example, after invoking his right to an

---

[3] An accused "initiates' a conversation if he evinces "a willingness and a desire for a generalized discussion about the investigation; [] not merely a necessary inquiry arising out of the incidents of the custodial relationship." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). The courts consistently use the words "communication, exchanges or conversations" to characterize valid post-initiation interrogations. *See, e.g.*, *Edwards*, 451 U.S. at 485; *see also Bradshaw*, 462 U.S. at 1045 (implying that the initiated discussion may be a "generalized discussion relating directly or indirectly to the investigation"). These words suggest that it is entirely appropriate for the police to be actively engaged in a dialogue with a suspect in these circumstances.

attorney, the law enforcement officer acknowledged the request and stated that "[w]e just wanted to offer you the opportunity to talk to us." As is reasonably foreseeable, Stiles responded. Law enforcement then seized on his response to engage in further conversation. This pattern repeated itself for the duration of the twelve (12) minute recorded interview. It continued despite Stiles repeated requests for an attorney. It continued with no *Miranda* warnings. It continued in violation of *Edwards* "clear and unequivocal" guidelines to law enforcement. *See Desire v. Attorney General of California*, 969 F.2d 802, 804 (9th Cir. 1992) (quoting *Minnick v. Mississippi*, 498 U.S. 146, 151 (1990).

Accordingly, based on the totality of the circumstances, the Court finds that the October 15, 2007, recorded interview was a custodial interrogation requiring the prophylactic *Miranda* warnings. As the statements made during the recorded interview were taken in violation of the *Edwards* rule and without *Miranda* warnings, they are inadmissible.

**C. Statements Made After The Recorded Interview At The Clark County Detention Center**

Following the conclusion of the recorded interview, as the law enforcement personnel were preparing to leave the interview room, Stiles made several voluntary, unprovoked statements. He inquired regarding the whereabouts of the car in which he was arrested and the procedure for ensuring it was returned to its rightful owner. In response, a law enforcement officer informed Stiles of police procedures regarding vehicles taken under similar circumstances and asked if there was anything else he could do for him. In response to that question, Stiles requested that law enforcement retrieve certain items and deliver them to specified individuals. Stiles then gave detailed directions to a bottle he had placed in the desert containing the various items he wished law enforcement to retrieve and deliver to specified individuals. The bottle also contained the key to a storage facility where his possessions were stored–a facility law enforcement already had under surveillance.

Under *Edwards*, a defendant who initiates further communication, exchanges, or conversations with the police after invoking his right to an attorney may be subject to further interrogation. *Bradshaw*, 462 U.S. at 1044. However, before a defendant may be subjected to

further interrogation, "there must be a clear showing that the suspect himself initiates dialogue with the authorities." *Id*. Even if a conversation taking place after the accused has "expressed his desire to deal with the police only through counsel" is initiated by the accused, where re-interrogation follows, the prosecution bears the burden to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation. *Id*.

Here, the record in regard to these statements is clear: they were made subsequent to custodial interrogation; were initiated by Stiles[4]; and were not the result of police interrogation. Essentially, Stiles initiated a dialogue with the police in order to request that they run personal errands for him. The record establishes that, even after the statements were made, the police did not attempt to re-interrogate Stiles by inquiring directly or indirectly about the case. The police simply listened and obliged. Because there was no interrogation following Stiles unprovoked statements, the *Edwards* rule was not violated and the government is not obligated to show waiver. *See Bradshaw*, 462 U.S. at 1044. Moreover, because there was no custodial interrogation there was no need to give the *Miranda* warnings.

Accordingly, based on the record before it, the Court finds that Stiles statements which led to incriminating physical evidence were voluntary, unprovoked, and not made during a custodial interrogation. Moreover, Stiles was not subjected to any further interrogation as a result of these statements. As such, under *Miranda*, the suppression of these statements, or any evidence obtained as a result thereof, is unwarranted.

**2. The Sixth Amendment**

Stiles also argues that his Sixth Amendment right to counsel was violated. The Sixth Amendment guarantees a criminal defendant "the right ... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated ... 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Fellers v. United States*, 540 U.S. 519, 523 (2004) (internal citations and quotations omitted). "But attachment of the right alone

---

[4] *See supra*., n. 3.

1  does not guarantee a defendant the assistance of counsel." *United States v. Harrison*, 213 F.3d
2  1206, 1209 (9th Cir. 2000). "A defendant must also invoke the Sixth Amendment right by hiring
3  a lawyer or asking for appointed counsel." *Id*. Attachment and invocation are distinct legal
4  events. *Id*.; *Cf. Maine v. Moulton*, 474 U.S. 159, 170 (1985).

5  Once the right has attached and been invoked the government is obligated to refrain from
6  the deliberate elicitation of information or the intentional creation of situations likely to induce
7  an indicted defendant to make incriminating statements outside the presence of counsel. "The
8  Government is guilty of 'deliberately eliciting' information if it intentionally creates a situation
9  likely to induce an indicted defendant to make incriminating statements without counsel's
10 assistance." *United States v. Kimball*, 884 F.2d 1274, 1278 (9th Cir. 1989) (citing *United States
11 v. Henry*, 447 U.S. 264, 270-71 (1980)). Whether the government creates a situation likely to
12 induce an indicted defendant to make incriminating statements is a question of fact.

13 **A. Statements Made During Transportation To The Clark County Detention**
14 **Center**

15 The voluntary statements made by Stiles during his post-arrest transport to the CCDC
16 were not taken in violation of the Sixth Amendment. The transporting officer made no attempt
17 to elicit any information from Stiles during transport. Accordingly, the statements made by Stiles
18 during transport are admissible.

19 **B. Statements Made During The Recorded Custodial Interview At The Clark**
20 **County Detention Center**

21 Stiles statements made during the recorded custodial interrogation were taken in violation
22 of *Miranda* and must be suppressed on that basis. Stiles also urges the Court to find these
23 statements inadmissible because they were taken in violation of his Sixth Amendment right to
24 counsel. Even assuming a Sixth Amendment violation, the more difficult question is the
25 appropriate scope of relief to be afforded Stiles. Here, Stiles argues not only for the suppression
26 of the statements made during the recorded interrogation, but also all evidence that can properly
27 be designated the fruits of that conduct. According to Stiles, this includes his statements made to
28 law enforcement personnel after the recorded custodial interrogation had concluded and the

1  physical evidence obtained as a result of these subsequent statements.

2        The Court agrees that the Constitution requires no less than the suppression of the
3  statements taken in contravention of the Sixth Amendment. *See Massiah v. United States*, 377
4  U.S. 201 (1964).  Further, the Court agrees that a Sixth Amendment violation also requires
5  suppression of all derivative evidence gleaned through exploitation of the government's
6  wrongdoing. *United States v. Kimball*, 884 F.2d 1274, 1278-79 (9th Cir. 1989) (citations
7  omitted); see also *Wong Sun v. United States*, 371 U.S. 471 (1963) (announcing a suppression
8  rule for all "fruits of the poisonous tree").  However, this does not end the inquiry.  There are
9  three exceptions to the "fruit of the poisonous tree" doctrine which allow for admission of
10 evidence derived from official misconduct: the "independent source" exception, the "attenuated
11 basis" exception, and the "inevitable discovery" exception. *United States v. Ramirez-Sandoval*,
12 872 F.2d 1392, 1396 (9th Cir. 1989).

13       The "attenuated basis" exception applies when the connection between the illegality and
14 the challenged evidence has become sufficiently weak so as to dissipate the taint caused by the
15 illegality. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (noting that the question is
16 "whether, granting establishment of the primary illegality, the evidence to which instant
17 objection is made has been come at by exploitation of that illegality or instead by means
18 sufficiently distinguishable to be purged of the primary taint").  Here, the record and testimony
19 demonstrates that when the recorded interview was completed the defendant initiated a second,
20 unrecorded voluntary conversation with law enforcement.  As a result of the statements made
21 during this conversation, law enforcement obtained incriminating evidence. *See supra*. at 8-9.

22       Even assuming the recorded statements were taken in violation of Stiles Sixth Amendment
23 right to counsel, it cannot be said that the statements made during the second, unrecorded conversation
24 were made because law enforcement exploited the prior illegality.  To the contrary, the subsequent
25 statements were made voluntarily, without police provocation, and outside the context of police
26 questioning.  Stiles volunteered the information during the course of requesting that law enforcement run
27 personal errands for him.  Accordingly, the Court finds that these voluntary, unprovoked statements,
28 made after the recorded interview concluded, are so attenuated from the prior recorded statements as to

be purged of any taint.[5]

Because the statements which led to the discovery of incriminating evidence are attenuated, so too is the evidence obtained as a result of those statements. As such, the statements and physical evidence, which includes the contents of the bottle as well as the storage facility are properly admissible. Because the Court finds these statements and the evidence obtained as a result thereof are admissible under the "attenuation exception," the Court does not reach the government's "inevitable discovery" argument.

### CONCLUSION

In conclusion, the record in this matter establishes: (1) the statements made by Stiles during transport did not violate the Fifth or Sixth Amendment; (2) the statements made by Stiles during the recorded interview were taken inviolation of *Miranda* and the *Edwards* rule; (3) the statements made subsequent to the recorded interview did not violate *Miranda* or *Edwards* because they were unprovoked, voluntary, and not the produce of any police questioning or interrogation; and (4) even assuming the statements made during the recorded interview were also taken in violation of the Sixth Amendment, the statements made subsequent to the recorded interview are so attenuated from any illegality as to remove any taint.

### RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the Defendant's Motion to Suppress (#36) be **GRANTED** as to the suppression of all statements made during the twelve (12) minute custodial interrogation.

IT IS FURTHER RECOMMENDED that all other requests be **DENIED**.

### NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court on or before March 30, 2009.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections

---

[5] To the extent the defendant seeks suppression of the statements and physical evidence as the illegal fruits of a *Miranda* or *Edwards* violation, neither the analysis or the result would change.

within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this __18th__ day of March, 2009.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge