GREGORY A. BROWER
United States Attorney
NANCY J. KOPPE
Assistant United States Attorney
333 Las Vegas Blvd South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 2:07-cr-00254-JCM-RJJ |
| ) | |
| CHESTER ARTHUR STILES, ) | |
| ) | |
| Defendant ) | |
| ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS
TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CERTIFICATION: This response is timely filed.

   The United States, by and through Gregory A. Brower, United States Attorney, and Nancy J. Koppe, Assistant United States Attorney, requests that this Court deny defendant's objections, adopt the Magistrate Judge's Report and Recommendation (R&R), and deny defendant's motion to suppress the statements made during transportation to Clark County Detention Center, the statements made after the recorded interview at the Clark County Detention Center, and the evidence recovered after these statements were made.

   The United States accepts without objection the Report and Recommendation written by United States Magistrate Judge Robert J. Johnston. Judge Johnston, as the fact-finder, had the opportunity to judge the demeanor and credibility of the witnesses and, after carefully listening to the witnesses' testimony, he made the determinations reflected in his R&R based on the record evidence.

**A.        Statements Made During Transport to Clark County Detention Center**

Judge Johnston has recommended that this Court deny defendant's motion to suppress as it relates to the statements he made to a law enforcement officer during his transport to the Clark County Detention Center on October 15, 2007. Judge Johnston, in his R&R, found that defendant's statements, during the course of his transportation, were "unprovoked" and "spontaneous." Doc. 52, at 4. Judge Johnston further found that the statements were not the product of interrogation and that their admissibility does not violate defendant's Fifth or Sixth Amendment rights. Doc. 52, at 4-5, 10. Defendant does not object to this finding by the Court. Doc. 56, at 2. As such, the United States asks this Court to deny defendant's motion to suppress the statements he made during his transport to the Clark County Detention Center on October 15, 2007.

**B.        Statements Made During Recorded Interview at Clark County Detention Center**

Judge Johnston has recommended that this Court grant defendant's motion to suppress the statements he made during the 12-minute recorded interview at the Clark County Detention Center. Neither party objected to this recommendation. *See* Doc. 56, at 2. Accordingly, the United States accedes to suppression of the statements defendant made during the 12-minute recorded interview on October 15, 2007.

**C.        Statements Made After Recorded Interview at Clark County Detention Center**

Judge Johnston has recommended that this Court deny defendant's motion to suppress the statements he made to law enforcement personnel after the recorded interview, when the law enforcement officers were packing up and preparing to leave the interview room. In his R&R, Judge Johnston correctly notes that defendant made "several voluntary, unprovoked statements" to law enforcement. Doc. 52, at 8. Defendant objects to this finding and asks this Court to suppress these statements, as well as the evidence found after the statements were made. The United States asks this Court to adopt the findings in the R&R, and to deny defendant's motion to suppress both the statements made after the recorded interview and the evidence from the bottle and storage unit.

### 1.      Post-Recorded Interview Statements

Judge Johnston states in his R&R that "the record in regard to these statements is clear: they were made subsequent to custodial interrogation; were initiated by Stiles; and were not the result of police interrogation.  Essentially, Stiles initiated a dialogue with the police in order to request that they run personal errands for him.  The record establishes that, even after the statements were made, the police did not attempt to re-interrogate Stiles by inquiring directly or indirectly about the case.  The police simply listened and obliged."  Doc. 52, at 9.

The law enforcement agents had concluded the interview and were exiting the room when defendant interrupted them to request their assistance concerning the bottle, the key and the storage locker.  Judge Johnston correctly found that, since no interrogation followed defendant's unprovoked post-recorded interview statements, the rule in *Edwards v. Arizona*, 451 U.S. 477, 484 (1981), was not violated.  Doc. 52, at 9.  Further, because defendant initiated the conversation after the recording, the statements are admissible.  *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); *Wyrick v. Fields*, 459 U.S. 42, 47 (1982).  As Judge Johnston found in his R&R, since no custodial interrogation existed during these statements, law enforcement had no need to give warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  Doc. 52, at 9.  The prior *Miranda* violation is unrelated to the discovery of evidence flowing from defendant's subsequent statements because defendant re-initiated contact with the agents as they were leaving.  Defendant simply cannot impute his subsequent statements (concerning the hidden bottle or the storage locker) to a *Miranda* violation, as recognized in the R&R.

Defendant's objections ignore the uncontroverted facts that (1) the discussion was over, (2) law enforcement agents were leaving, (3) everyone (including defendant) understood that discussions would not resume without the presence of defense counsel and (4) it was defendant who stopped the agents from leaving and began a discussion about the bottle, the key and the storage locker.  As such, these statements are clearly admissible.

. . . .

### 2. Bottle, Key and Storage Locker

Defendant next claims that the evidence found after he made the spontaneous post-recording statements should be inadmissible because, he argues, they are not subject to the attenuation doctrine. Judge Johnston, however, found in his R&R that the "voluntary, unprovoked statements, made after the recorded interview concluded, are so attenuated from the prior recorded statements as to be purged of any taint." Doc. 52, at 11-12. Judge Johnston correctly found that "[b]ecause the statements which led to the discovery of incriminating evidence are attenuated, so too is the evidence obtained as a result of those statements. As such, the statements and physical evidence, which includes the contents of the bottle as well as the storage facility are properly admissible." Doc. 52, at 12. The United States asks this Court to adopt these findings.

As a general rule, the fruit of the poisonous tree doctrine forbids the use of evidence obtained following an illegal arrest. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963). However, the attenuation doctrine provides that after-obtained evidence is admissible if the connection between the initial illegality and the means through which the evidence was secured is so attenuated as to dissipate the taint. *United States v. Smith*, 155 F.3d 1051, 1060 (9th Cir. 1998) ("The 'attenuated basis' exception is, at bottom, the manifestation of the courts' consistent rejection of a 'but for' causation standard in 'fruit of the poisonous tree' doctrine.").

Here, law enforcement officers had probable cause (and a warrant) to arrest defendant. Once in custody, defendant had the right not to speak to law enforcement agents and he actually invoked that right prior to the issuance of *Miranda* warnings. Nevertheless, after defendant refused to speak with police except in the presence of counsel, and after the recorded conversation was over and agents were literally heading for the door to leave, defendant chose to re-initiate contact with the agents. He asked them to undertake personal errands for him, broaching for the first time the storage shed and a bottle in the desert, which led to the application for the search warrants. Defendant's willingness to re-initiate contact with law enforcement after all contact had ceased clearly purged the taint of any prior illegality.[1]

---

[1] Supreme Court case law prohibits the use of evidence derived from statements obtained in

### 3. No Sixth Amendment Violation

Defendant asks this Court to find that law enforcement violated his Sixth Amendment right to counsel simply by speaking to him because he was arrested after the indictment against him issued. Judge Johnston did not answer the question as to whether defendant's recorded statement violated his Sixth Amendment right. He found, however, that even if the recorded statement violated defendant's Sixth Amendment right, "it cannot be said that the statements made during the second, unrecorded conversation were made because law enforcement exploited the prior illegality. To the contrary, the subsequent statements were made voluntarily, without police provocation, and outside the context of police questioning." Doc. 52, at 11. Judge Johnston found, in fact, that defendant "volunteered the information during the course of requesting that law enforcement run personal errands for him." *Id.*

The Sixth Amendment guarantees a criminal defendant "the right ... to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has held that the right to counsel attaches when a defendant is formally charged. *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). Attachment and invocation, however, are distinct legal events, and attachment alone does not trigger a violation whenever agents later speak with a defendant. In order for the Sixth Amendment right to counsel to apply, a defendant must invoke it by hiring a lawyer or asking for appointed counsel. *United States v Harrison*, 213 F.3d 1206, 1209 (9th Cir. 2000).

Further, even once a defendant has invoked his Sixth Amendment right, the Supreme Court has held that his statements must be suppressed only if agents "deliberately elicited" incriminating statements about the case from him "after he had been indicted and in the absence of

---

violation of the Fifth or Sixth Amendments. However, the "fruit-of-the-poisoned-tree" doctrine does *not* extend to evidence derived from *Miranda* violations. *Elstad*, 470 U.S. at 308; *Michigan v. Tucker*, 417 U.S. 433, 450-51 (1974); *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1048 (9th Cir. 1990); *United States v. Orso*, 275 F.3d 1190, 1192 (9th Cir. 2001) (en banc) ("What emerges from *Dickerson* is that *Elstad*, as explicated in the limited en banc panel's opinion, is good law; unless a first-obtained, un-Mirandized confession is involuntary, a later-obtained, Mirandized confession is not subject to a fruit-of-the-poisonous-tree analysis.") (O'Scannlain, J., specially concurring). Accordingly, there is simply no precedent for suppressing the evidence absent a showing of involuntariness. Defendant does not contend his statements were involuntary, nor does the record support such an inference.

his counsel." *Massiah v. United States*, 377 U.S. 201, 206 (1964). *See also Fellers v. United States*, 540 U.S. 519, 524 (2004) (Supreme Court has consistently applied deliberate elicitation standard in Sixth Amendment cases since *Massiah*); *United States v. Henry*, 447 U.S. 264, 270 (1980) ("The question here is whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements"); *Brewer v. Williams*, 430 U.S. 387, 399 (1977) (Sixth Amendment violated where detective "deliberately and designedly set out to elicit information from [defendant]").

Here, defendant's Sixth Amendment right attached once he was indicted. He did not invoke that right before or during his statement, however. As such, defendant's statements were not taken in violation of his Sixth Amendment right. Even if defendant had invoked his Sixth Amendment right, however, Judge Johnston has specifically and correctly found that the post-recording statements defendant made were initiated by defendant and were not the result of police interrogation. Thus, they were clearly not deliberately elicited by the police.[2] Doc. 52, at 9.[3] Therefore, defendant's Sixth Amendment claim must fail.

. . . .

. . . .

. . . .

---

[2] The uncontroverted testimony clearly establishes that defendant spontaneously asked the officers about the car in which he was arrested, and about how to get the car back to its owner. The uncontroverted testimony further shows that, after the car discussion, Sgt. Stansbury asked defendant if there was anything else they could do for him. This question can, in no way, be interpreted as some sort of ploy to get defendant to give incriminating statements. In response, defendant gave detailed directions to a bottle in the desert, a bottle that law enforcement had no prior knowledge of. Defendant also told the officers that the bottle contained a key to a storage facility, leased by Susan Windrem, that contained some of his belongings. Defendant asked the officers to give the key to Susan so that she could retrieve her belongings and dispose of his. He also asked them to distribute items in the bottle to specific people.

[3] A Nevada State Court, after hearing testimony from the same witnesses on a similar motion during the Nevada prosecution of part of this case, stated "...I have done a lot of these hearings. I have never seen less of a [ruse] in a case, as long as I've been doing this. They're packing up to go. He has concerns about the car. He has concerns about his belongings, his letter, his girlfriend. Basically, he's asking them to run errands for him as they're getting up to walk out the door." Doc. 40-2, at 101. The Court went on to state that "any statement is thus attenuated based upon his voluntary request for them to do things for him." *Id*.

### 4. Inevitable Discovery

Judge Johnston did not reach the United States' inevitable discovery argument because he found that the post-recording statements and the evidence obtained as a result of those statements are admissible under the attenuation exception. The United States asks this Court to adopt these findings. Even if this Court did not adopt those findings, however, the evidence inside the storage facility is still admissible, as it would have been inevitably discovered. The inevitable discovery doctrine permits the admission of otherwise excluded evidence "if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police..." *Nix v. Williams*, 467 U.S. 431, 447 (1984).

Both SA Gruninger and Sgt. Stansbury testified that law enforcement knew about this storage facility during the two weeks that they were searching for defendant before his arrest. They also knew that defendant stored items inside the facility. Sgt. Stansbury testified that he and his team surveilled the storage facility on more than one occasion, because they believed that defendant might return for his belongings, and they could arrest him. As a result, and despite the existence of probable cause, law enforcement did not obtain a search warrant for the storage facility prior to defendant's arrest, because they were afraid that if defendant was aware that they knew about the storage facility, he would not return to it. They did not want to stop him from returning to the facility. Additionally, Susan Windrem, the woman whose name was on the facility's lease, was cooperative with law enforcement, and even invited law enforcement to remove additional items from the storage facility after defendant's arrest. SA Gruninger and Sgt Stansbury knew about the storage facility long before defendant told them about it, they could have obtained a search warrant for the storage facility even without defendant's statements on October 15, 2007, they would have received permission to search from Ms. Windrem, and the evidence inside would have been inevitably discovered. As such, the evidence is also admissible on this alternate ground.

. . . .

. . . .

**D.       Conclusion**

Accordingly, the United States respectfully requests that this Court adopt the Magistrate Judge's Report and Recommendation, deny defendant's objections, grant defendant's motion to suppress the statements made during the 12-minute recorded interview only, and deny defendant's motion to suppress the statements he made during his transport to the Clark County Detention Center, as well as his post-recording statements and the evidence that was recovered thereafter.

DATED this 7th day of April, 2009.

Respectfully submitted,

GREGORY A. BROWER
United States Attorney


_/s/_____
NANCY J. KOPPE
Assistant United States Attorney

## CERTIFICATE OF SERVICE

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                             )<br>        Plaintiff,                                    )<br>                                                             )<br>vs.                                                        )<br>                                                             )<br>CHESTER ARTHUR STILES,           )<br>                                                             )<br>        Defendant.                              )<br>_____ ) | 2:07-cr-00254-JCM-RJJ |

The undersigned hereby certifies that she is an employee in the office of the United States Attorney for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on April 7, 2009, she served a copy of the attached **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**, by electronic service through CM/ECF filing.

    Addressee:    Brenda Weksler.
                           Assistant Federal Public Defender

                                                                /s/
                                                      Nancy J. Koppe, AUSA