1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

2:07-CR-254 JCM (RJJ)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CHESTER ARTHUR STILES,

        Defendant.

**ORDER**

    Presently before the court are the defendant's objections to Magistrate Judge Johnston's March 18, 2009 report and recommendation. (Doc. #56.) Defendant filed a motion to suppress statements he made to law enforcement officers after his October 15, 2007 arrest, as well as evidence recovered as a result of those statements. (Doc. #36.)

    After an evidentiary hearing, Judge Johnston recommended that this court grant defendant's motion in part and deny it in part. Specifically, Judge Johnston found that defendant's statements made during a recorded interview with officers should be suppressed because defendant was not given *Miranda* warnings prior to the interview. However, he found that the statements made after the officers turned off the tape recorder were "attenuated" from the custodial interrogation of the recorded interview and, therefore, were not subject to the exclusionary rule. Defendant objects to this finding. (Doc. #56.) The government asks this court to accept the recommendation without objection. (Doc. #58.)

    When a party objects to the findings and recommendations of a magistrate judge made pursuant to LR IB 1-4, this court reviews a de novo those portions of the specified findings or

**James C. Mahan**
**U.S. District Judge**

1    recommendations to which objections have been made.  LR IB 3-2.  Because defendant objects only

2    to Judge Johnston's ruling on the post-recording statements, and the fruits thereof, this court

3    addresses only those issues.

4         This court finds that the statements made after the tape recorder was turned off should be

5    suppressed.  The officers' continuing discussion with the defendant took place in the absence of

6    *Miranda* warnings and after defendant had invoked his right to counsel.  The fact that the tape

7    recorder was turned off during part of this discussion does not serve to separate the interview into

8    two parts.  Therefore, all recorded and unrecorded statements made during the entire discussion

9    should be suppressed.

10        Defendant's Sixth Amendment right to counsel attached when he was indicted on October

11   10, 2007.  *See Fellers v. United States*, 540 U.S. 519, 523 (2004).  He also had Fifth Amendment

12   rights which were not explained to him by the officers, as required under *Miranda v. Arizona*, 384

13   U.S. 436 (1966).  Despite the fact that he was not given his *Miranda* warnings, defendant asserted

14   his right to counsel immediately.  Once he invoked that right, the interview should have ceased.  *See*

15   *Edward v. Arizona, 451 U.S. 477, 484 (1981); United States v. Harrison*, 213 F.3d 1206, 1209-10

16   (9th Cir. 2000).

17        There is no dispute that his request for an attorney was an unequivocal invocation of his

18   rights.  All three officers who were present during the interrogation testified that they understood

19   defendant's repeated references to a lawyer to be an unequivocal request for counsel.  Still, the

20   interview continued on tape for 12 minutes.  Clearly the recorded portion of the interview violated

21   defendant's Sixth Amendment rights, as well as the rules laid out in *Edwards* and *Miranda*.  Yet,

22   this court is asked to believe that the constitutional violations ceased once officers turned off the tape

23   recorder.  Indeed, Judge Johnston found that the defendant initiated a new line of discussion after

24   officers turned off the tape recorder and that, as a result, these statements were sufficiently attenuated

25   from the unconstitutional tape recorded interrogation to purge the taint of the initial violation.  This

26   court disagrees.

27        As Judge Johnston noted, "the recorded interview clearly shows a situation where law

28

**James C. Mahan**
**U.S. District Judge**

1   enforcement would initiate conversation or keep a prior conversation alive by making comments

2   reasonably likely to elicit a response." (Doc. #52 at 7.)  At one point in the recorded interview, an

3   officer asked defendant if there was anything officers "could get for [him] tonight."  When the

4   defendant did not respond, the officer began asking about possible attorneys that defendant might

5   want to contact.  It is only reasonable to assume that this pattern of lingering and extending the

6   conversation continued after the tape was turned off, and the officers' testimony bolsters this theory.

7   They testified that defendant initiated a conversation after the recording stopped by asking what

8   would happen to the car he had been driving when he was arrested.  Rather than explain that the

9   conversation was over because defendant had asked for a lawyer, officers discussed the car issue.

10  Then, in keeping with the pattern of eliciting information from the defendant, one officer asked what

11  else they could do for him.  It was this question that eventually led to a discussion about defendant's

12  storage unit and the bottle containing its key.

13         It is true that no constitutional violation occurs when officers talk with an accused who  has

14  initiated a conversation or shown a willingness to have a generalized discussion about an

15  investigation.  *See Oregon v. Bradshaw,* 462 U.S. 1039, 1046 (1983).  However, in such cases, the

16  court must determine whether there has been a valid waiver of the right to counsel and/or the right

17  to remain silent.  In doing so, this court considers "whether the purported waiver was knowing and

18  intelligent and found to be so under the totality of the circumstances, including the necessary fact that

19  the accused, not the police, reopened the dialogue with the authorities."  *Id.* This "determination

20  depends upon the particular facts and circumstances surrounding the case, including the background,

21  experience, and conduct of the accused."  *Id.*  Here, defendant was never informed of his right to

22  remain silent or his right to counsel.  Further, there is no evidence to suggest that he understood the

23  consequences of making statements to officers without an attorney present.  Therefore, this court

24  cannot say that he knowingly and intelligently waived his rights when he spoke with officers.

25         The failure to provide *Miranda* warnings does not require suppression of the physical fruits

26  of defendant's unwarned but voluntary statement.  *United States v. Patane*, 542 U.S. 630 (2004).

27  The officers' actions violated defendant's Sixth Amendment right to counsel, which requires

28

**James C. Mahan**
**U.S. District Judge**

1   suppression of all evidence seized as a result of defendant's statements unless the evidence meets
2   one of the exceptions to the fruit of the poisonous tree doctrine.  *See Ramirez-Sandoval*, 872 F.2d
3   1392, 1396 (9th Cir. 1989) (recognizing the three exceptions as 1) independent source, 2) attenuated
4   basis, and 3) inevitable discovery).

5       Here, two items were recovered after officers met with defendant: 1) a frappuccino bottle
6   containing several items, which was buried in the desert, and 2) a storage unit located in Pahrump,
7   Nevada.  The bottle and its contents must be suppressed because they do not fall under any of the
8   above noted exceptions.  However, the storage unit was already under surveillance when defendant
9   made his statements to the officers.  The police would have obtained the evidence from the storage
10  facility by obtaining a search warrant even if no interrogation had taken place.  Therefore, the
11  inevitable discovery exception applies to all evidence inside the storage unit.  *See Nix v. Williams*,
12  467 U.S. 431, 444 (1984).

13      In the Ninth Circuit, officers do not need to show that the evidence would have been obtained
14  from a previously initiated, independent investigation.  *United States v. Ramirez-Sandoval*, 872 F.2d
15  1392, 1399 (9th Cir. 1989).  Rather, "[t]he government can meet its burden by establishing that, by
16  following routine procedures, the police would inevitably have uncovered the evidence."  *Id.*  Here,
17  officers testified that they knew about the storage unit and that they only refrained from obtaining
18  a search warrant for the unit because they believed defendant would return to it eventually.  The
19  government has shown by a preponderance of the evidence that the evidence inside the storage unit
20  inevitably would have been discovered without defendant's statements.  Therefore, the evidence
21  seized from the storage unit will not be suppressed.

22      IT IS HEREBY ORDERED ADJUDGED AND DECREED that Magistrate Judge Johnston's
23  report and recommendation (doc. #52) be, and the same hereby are, **AFFIRMED in part and**
24  **REVERSED in part.**

25      IT IS FURTHER ORDERED that defendant's motion to suppress (doc. #36) be, and the same
26  hereby is, **GRANTED in part and DENIED in part.**

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

1    IT IS FURTHER ORDERED that defendant's statements made during the October 15, 2007,

2    interrogation, both recorded and unrecorded, be suppressed.

3    IT IS FURTHER ORDERED that all evidence seized from defendant's storage unit is

4    admissible as it would have been discovered by officers in any event.

5    IT IS FURTHER ORDERED that the frappuccino bottle and all of its contents shall be

6    suppressed as the fruits of the October 15, 2007 constitutional violations.

7    IT IS FURTHER ORDERED that all other recommendations in Magistrate Judge Johnston's

8    report and recommendation (doc. #52) be, and the same hereby are, **AFFIRMED** in their entirety.

9    DATED this 20th day of April, 2009.

10

11    _____

      **UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 5 -